UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY R. ) | |
|        Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:23-CV-155-JVB |
| ) | |
| MARTIN O'MALLEY, Commissioner ) | |
| of the Social Security Administration, ) | |
|        Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Timothy R. seeks judicial review of the Social Security Commissioner's decision denying his applications for disability insurance benefits and supplemental security income and asks this Court to reverse that decision and remand this matter to the agency. For the reasons below, the Court denies Plaintiff's request and affirms the decision of the Social Security Commissioner.

**PROCEDURAL BACKGROUND**

In Plaintiff's December 28, 2020 applications for benefits, he alleged that he became disabled on June 9, 1975. A prior unfavorable decision was issued on May 4, 2020. An administrative hearing was held on May 25, 2022 hearing, and the Administrative Law Judge (ALJ) issued her decision on August 25, 2022. In that decision, the ALJ found that Plaintiff had the severe impairments of generalized anxiety disorder, post-traumatic stress disorder (PTSD), a bipolar II disorder, depression, and a schizoaffective disorder, depressed type. (AR 19). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, and further determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels subject to several non-exertional limitations. The ALJ determined that Plaintiff could not perform his past relevant work but was able to perform the job requirements of the representative occupations of kitchen

helper, hospital cleaner, and counter supply worker, which combined have 220,000 jobs in the national economy. As a result, the ALJ found Plaintiff to not be disabled from May 5, 2020—the day after the prior unfavorable decision—through August 25, 2022, the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act. 20 C.F.R. § 1520(a)(4). The first step is determining whether the claimant is engaged in substantial gainful activity. If the claimant is, then the claimant is found to be not disabled. *Id.* § 1520(a)(4)(i). The remaining steps are:

> whether the claimant has a severe impairment; whether the claimant's impairment is one that the Commissioner considers conclusively disabling; if the claimant does not have a conclusively disabling impairment, whether [they] can perform [their] past relevant work; and whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (index numbers omitted). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

2

## ANALYSIS

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy which Plaintiff is able to perform. The Commissioner has the burden of establishing that this is so. *Chavez v. Berryhill*, 895 F.3d 962, 963 (7th Cir. 2018). Plaintiff argues that the ALJ's finding at step five is not supported by substantial evidence because it is based on the unreliable testimony of the vocational expert (VE). Specifically, Plaintiff argues that no substantial evidence supports the VE's estimates of the number of jobs in the national economy for the representative occupations that the VE testified that a person with Plaintiff's RFC could perform.

ALJs commonly rely on the testimony of vocational experts, who are experienced in job placement, in making the step five determination. *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024). "To make their assessment, vocational experts may rely on a variety of sources and tools, as well as their knowledge of the job market, experience placing individuals in jobs, and surveys of employers." *Id.* (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S.Ct. 1148, 1152-53 (2019)). The Job Browser Pro SkillTRAN software is a "widely used, commercially available resource[]" that helps convert the Social Security Administration's Dictionary of Occupational Titles categorization system to the Bureau of Labor Statistics' Standard Occupational Classification system, which is necessary because only the latter provides job numbers. *Id.* at 1022.

The substantial evidence standard that ALJ decisions are held to means that, when relying on VE testimony, an ALJ must "ensure that the [vocational expert's job number estimate] is the product of a reliable method." *Id.* (quoting *Fetting v. Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023)) (alteration in original). That is, the VE's testimony "must be supported with evidence sufficient to provide some modicum of confidence in its reliability," which translates to giving "enough detail

3

for [the Court] to understand the sources of his data and the general process he adopted." *Id.* (quoting *Fetting*, 62 F.4th at 339; *Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023)) (alteration in original).

At the administrative hearing, Plaintiff's representative asked the VE what methodology he used "to get from the Bureau of Labor Statistic numbers to the national numbers for job classifications." (AR 61). The VE stated that he uses Job Browser SkillTRAN "to further extrapolate the numbers." *Id.* He clarified, when asked, that he did not know the mathematical equation SkillTRAN uses in crafting its estimated job numbers. *Id.* at 61-62. Plaintiff's representative objected to the use of SkillTRAN estimates, referencing *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015). (AR 62). The ALJ asked about other VEs' usage of SkillTRAN, and the VE said that it "is commonly used among vocational experts and people in the field that deal with job placement and job numbers." *Id.*

Plaintiff's representative objected "to those Step Five numbers [testified to by the VE] based on the reasoning outlined in the [*Alaura*] case." *Id.* at 62. In that case, the Seventh Circuit questioned the "equal distribution" method of

> divid[ing] the number of jobs in the broad category [of jobs] that includes the narrow category of jobs that the applicant can perform by the number of narrow categories in the broad category, thus assuming that each narrow category has the same number of jobs as each other narrow category—which is preposterous.

*Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015) (citation and italics omitted). The ALJ credited Plaintiff with objecting "to the methodologies and job numbers used by the vocational expert as they related to the finding of other work in the national economy." (AR 16). The ALJ denied the objection, noting that the VE testified to using SkillTRAN, a common method among VEs. *Id.* The ALJ found that the VE "is a highly qualified expert in the area of vocational rehabilitation[,] and his professional knowledge and experience is sufficient basis for his testimony." *Id.* The ALJ

also found SkillTRAN to provide reliable job information, noting that the program compiles information from the Dictionary of Occupational Titles, the Occupational Outlook Handbook, Occupational Employment Statistics, and the census, all of which the ALJ can take administrative notice of by regulation. *Id.*; *see also* 20 C.F.R. § 404.1566(d).

The ALJ "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," subject to a difference regarding the kitchen helper job that the VE testified about at the hearing, and the ALJ found "the impartial vocational expert's testimony to be reasonable, based on [his] research and experience in the vocational field." (AR 82).

As an initial matter, the Court notes that the objection presented at the hearing by reference to *Alaura*, is hard to follow. The court in *Alaura* reasoned that the equal distribution method of estimating job numbers is "preposterous," but the VE did not use that method here, instead relying on the SkillTRAN program to derive those numbers. That is, this objection "did not give the ALJ any reason to believe that [the VE's] testimony might be unreliable" because the reasoning of *Alaura* was inapplicable to the method testified to *Chavez*, 96 F.4th at 1026. The Court adopts the ALJ's understanding, unchallenged by Plaintiff, that Plaintiff's objection was "to the methodologies and job numbers used by the vocational expert as they related to the finding of other work in the national economy." (AR 16).

Plaintiff argues that the VE did not adequately explain how that Standard Occupational Classification codes were matched to Dictionary of Occupational Titles numbers. The VE testified that he used the SkillTRAN program but did not explain how that program estimates numbers, and the VE did not comment on why he uses SkillTRAN other than to say that the program is commonly used by his colleagues. While the VE's testimony is not long, the ALJ (and the Court)

can understand the VE's general process and the source of his data. The testimony of the VE at the hearing was sufficient for the ALJ to "provide some modicum of confidence" in the reliability of the job number estimates he provided. *Chavez*, 96 F.4th at 1022 (quoting *Fetting*, 62 F.4th at 339).

Plaintiff next argues that, in addition to using the SkillTRAN program, the VE performed an initial extrapolation of the data. Plaintiff contends that the methodology behind this initial extrapolation was not disclosed and is an error that requires remand. The transcript of the administrative hearing records the following colloquy between Plaintiff's representative and the VE:

> Q: . . . What methodology do you use to get from the Bureau of Labor Statistic numbers to the national numbers for job classifications?
>
> A: I use Job Browser SkillTRAN to further extrapolate the numbers.
>
> Q: And do you know what the mathematical equation, or how they break that down, to just [INAUDIBLE].
>
> A: Well, they rely on an industry based formula. They determine where jobs are likely to be found in certain industries, and they do take – add up from the Bureau of Labor Statistics to help them do that. And then, you know, some DOT titles are thrown out. So it's a mix of some industries may hire, you know, certain employees that they need to do certain jobs, where others don't. So they use that type of distribution and they come up with the job estimates, you know, based on that. I don't know if I'm being clear. But that's the process that they go through to come up with the estimates.
>
> REP: Okay. All right. Thank you. . . .

(AR 61-62). Plaintiff's argument hinges on the word "further" in the phrase "to further extrapolate the numbers." Plaintiff insists this implies the existence of a prior extrapolation. Though the VE's answer would have been clearer without the word "further," in context, the VE's answer does not require the existence of any extrapolation between the gathering of the Bureau of Labor's statistic numbers and the SkillTRAN process. The Court notes that Plaintiff's representative at the hearing

6

did not object or indicate confusion regarding this statement. Looking at the transcript, it appears that the representative adopted the same interpretation that the ALJ later did—that the only method that needed to be examined based on this statement was the SkillTRAN program. This argument of a possible interpretation of the VE's testimony does not negate that the ALJ's decision is based on substantial evidence.

Plaintiff asserts that the ALJ's rationale for accepting the VE's testimony does not pass muster. The ALJ wrote that she found "the impartial vocational expert's testimony to be reasonable, based on [his] research and experience in the vocational field." (AR 82). Plaintiff believes that the VE's knowledge and experience in general are inapplicable to the specific question of whether to accept the VE's specific testimony on estimated job numbers for Plaintiff. However, the Seventh Circuit recently held that a VE does not need to explicitly tie their professional experience to their job number estimates for their testimony to constitute substantial evidence. *Chavez*, 96 F.4th at 1023. The ALJ asked the VE about the accuracy of his resume and his familiarity with Social Security definitions and Plaintiff's vocational background. (AR 56-57). Plaintiff had no objections to the witness's ability to testify as a VE. (AR 57-58). The VE's research and experience in the field comprise substantial evidence on which the ALJ can accept the VE's testimony, including job number estimates.

Citing *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022), Plaintiff maintains that a "cogent and thorough" explanation of the VE's methodology is required, and the ALJ did not require the VE to provide one before accepting his testimony The ALJ asked the VE about his resume and inquired into how the VE derived his job number estimates. The VE explained that, as is common in his field, he used the SkillTRAN program to translate between the Dictionary of Occupational Titles and Standard Occupational Classification systems. Aside from his linguistic

7

argument about the word "further," which the Court has rejected, Plaintiff has not explained what more was needed before, in his view, the ALJ could accept the VE's testimony.

Plaintiff also faults the ALJ for finding that SkillTRAN provides reliable job estimates. While Plaintiff has a point that the ALJ appears to have gathered information from outside the administrative record about where SkillTRAN compiles its information from, the ALJ specifically found that the VE's experience and professional knowledge were a "sufficient basis for his testimony." (AR 16). That is, assuming that the ALJ's finding that SkillTRAN is a reliable provider of job information based on its sources is in error, the error is harmless because the ALJ explicitly identified an alternate ground for the same holding: the VE's testimony, which was supported by the VE's professional knowledge and experience.

The Court's review of an ALJ's decision is deferential, and Plaintiff has not identified a sufficient basis on which to disturb the decision, which is supported by substantial evidence.

## CONCLUSION

For these reasons, the Court hereby **DENIES** the relief requested in Plaintiff's Opening Brief [DE 12] and **AFFIRMS** the decision of the Commissioner of Social Security.

SO ORDERED on May 8, 2024.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT
